UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
JAMES GOLDRING and GINA GOLDRING,                          :
                                                           :
                              Plaintiffs,                  :   **MEMORANDUM DECISION &**
                                                           :   **ORDER**
              - against -                                  :
                                                           :   14 Civ. 4861 (BMC)
DET. JASON ZUMO, *et al.*,                                 :
                                                           :
                              Defendants.                  :
                                                           :
---------------------------------------------------------- X

**COGAN,** District Judge.

Before me is defendants' partial motion to dismiss (which would be better phrased as a motion for partial dismissal) for failure to state a claim. Defendants move to dismiss plaintiff James Goldring's claim of "harassment," which arises from economic harm allegedly done to his barbershop business by certain of the defendant police officers in the months following plaintiff's arrest for accidentally shooting his son. For the reasons that follow, defendants' motion is granted and this claim is dismissed.

## BACKGROUND

This case is principally concerned with plaintiffs' unlawful search and false arrest claims arising from an incident in which plaintiff James Goldring accidentally shot his teenaged son while cleaning a firearm in their home in Queens County. The allegations that are the subject of the instant motion concern certain conduct by police officers occurring in the months following, and allegedly related to, that incident. The following facts are assumed true for the purpose of deciding this motion.

About two months after the shooting incident that gave rise to plaintiffs' other claims in this case, five N.Y.P.D. officers from the 113th Precinct entered plaintiff James Goldring's

barbershop to inspect his business and professional licenses.[1]  On the same day, a customer smoking outside of the shop was arrested for loitering.  Two days later, two officers entered the barbershop and examined the same licenses.  About five months later, nine of the named defendant officers entered the shop for the same reason.  Plaintiff was then issued three summonses for failure to display his barber's license; having unswept hair on the floor; and failure to display the address of his barbershop on the front door.[2]  All of these charges were ultimately dismissed.

Several weeks later, a customer who had just come out of the shop was stopped and questioned by five police officers traveling in unmarked cars.  He was told that he had been stopped because "the shop was known to be a place of criminal activity."  About one week later, six of the named defendants entered the barbershop and issued three summonses for an unswept floor; for an uncovered garbage can; and for the presence of paper towels that had not been thrown into the garbage can.[3]  All of these charges were ultimately dismissed.

About two months later, several officers entered the barbershop and demanded the licenses of the two barbers present, and then issued four summonses to each of them for having hair on the floor of the shop, not having a cover on the garbage can, not having an address on the front door of the premises, and not having licenses displayed.  As a result of this "constant harassment," plaintiff's business began to suffer, lost customers and employees, fell behind on its rent, and was forced to close.

---

[1] Defendants construe the claim at issue as brought only on behalf of James Goldring.  Plaintiffs do not object to this construction, and I adopt it for purposes of this decision.  References to "plaintiff" hereafter are to Mr. Goldring.

[2] These summonses alleged violations of the New York State General Business Law, New York City Health Code, and New York City Administrative Code.

[3] These summonses alleged violations of the New York City Health Code.

## DISCUSSION

I. **The Nature of Plaintiff's Claim**

The Complaint suggests, and plaintiff's opposition to the instant motion confirms, that the claim at issue is one for violation of plaintiff's procedural due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution, via 18 U.S.C. § 1983, based on the constitutional tort of malicious abuse of process. See Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003). This has not been agreed to from the outset, so I address it briefly.

The crux of plaintiff's claim is that the summonses issued to him were issued "with the intention, ultimately successful, not of enforcing those statutes and ordinances, but of harming and interfering with [plaintiff]'s business to the point that it was destroyed." No other constitutional violation is argued in plaintiff's opposition, and the Complaint alleges no purpose beyond a campaign "maliciously aimed at harming his business."

During the off-the-record Initial Status Conference in this case, the Court and the parties attempted to clarify the cause of action stated by these allegations. In light of that attempt, which was inconclusive, defendants' motion addressed procedural due process claims arising both from deprivation of property and from malicious abuse of process which, in a criminal context, is "by definition" a violation of procedural due process. See Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994); Hoffman v. Town of Southampton, 893 F. Supp. 2d 438, 446-47 (E.D.N.Y. 2012), aff'd sub nom. Peter L. Hoffman, Lotte, LLC v. Town of Southampton, 523 F. App'x 770 (2d Cir. 2013).[4] Defendants' motion therefore includes an argument that plaintiff has failed to allege the inadequacy of state remedies. This is an argument they expressly addressed only "[t]o the extent

---

[4] There is no argument that the allegations at issue raise a substantive due process claim. In particular, claims of abuse of process brought via § 1983 "are typically analyzed under the rubric of procedural, not substantive, due process." Kennedy-Bifulco v. Town of Huntington, No. 08-cv-1612, 2010 WL 6052343, at *14 (E.D.N.Y. Oct. 29, 2010), report and recommendation adopted, No. 08-cv-1612, 2011 WL 883697 (E.D.N.Y. Mar. 10, 2011).

3

plaintiff attempts to state a claim for deprivation of property," where (unlike in abuse of process claims), exhaustion of state remedies is a requirement. See Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194 (1984).

Plaintiff's opposition to the instant motion makes clear that he is not asserting a deprivation of property claim, but only an abuse of process claim. Although both are actionable as violations of procedural due process under § 1983, they are distinct claims, and plaintiff only asserts the latter. For example, he styles his submission an "opposition to defendants' motion to strike that portion of plaintiffs' complaint that alleges a cause of action for malicious abuse of process in violation of plaintiffs' right to due process of law." Moreover, the parties cite no authority suggesting that a deprivation of property claim is appropriate on the facts at bar, and I am aware of none. The only claim at issue, therefore, is malicious abuse of process, and there is no need to address the parties' arguments with respect to the adequacy of state law remedies.

## II. Malicious Abuse of Process

A malicious abuse of process claim brought via the Due Process Clause and § 1983 adopts the elements of the tort under New York law, under which a claim lies against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino, 331 F.3d at 76-77.

It is only the third element that is disputed in this case. However, although the parties do not dispute the first element, the requirement for "regularly issued legal process" limits my inquiry to the alleged appearance tickets and arrests, and excludes any conduct involving mere inspection of licenses, questioning of patrons, or the like.

The Second Circuit has made clear that a "malicious motive alone" is insufficient to satisfy the "collateral objective" requirement of an abuse of process claim. Id. at 77 (quotation omitted). "Instead, [plaintiff] must claim that [defendants] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Id. (holding that retaliation for unwanted media exposure by city employee is not a collateral objective); see also Hoffman, 893 F. Supp. at 448 ("In evaluating this element, the Second Circuit expressly distinguishes between a 'malicious motive' and an 'improper purpose'; only the latter suffices to meet the 'collateral objective' prong of the abuse of process standard.").[5]

Plaintiff's position is that the defendants' alleged goal of harming his business is collateral to the enforcement of heath and business ordinances. I am aware of no decision by the Second Circuit that opines on the viability of this legal theory. The weight of the limited district court authority in this Circuit suggests that in the criminal context, harm to a plaintiff's business is not sufficient unless it is used a means to compel some other result.[6] In Jones v. Maples/Trump, No. 98 CIV. 7132, 2002 WL 287752, at *7 (S.D.N.Y. Feb. 26, 2002), aff'd sub nom. Jones v. Trump, 71 F. App'x 873 (2d Cir. 2003), the court explained that the collateral objective element requires "an effect outside the intended scope of operation of the process employed." The plaintiff alleged that certain government officials had acted in conspiracy with his former employer "by bringing harassment charges against him to settle a personal vendetta . .

---

[5] The Court in Cook, cited by Savino for the elements of § 1983 abuse of process, held that retaliation (specifically, First Amendment retaliation) was a sufficient collateral objective. Despite Savino's general reliance on Cook, it appears that Cook is overruled by implication to the extent that they are in tension. In any event, plaintiff does not allege a retaliatory motive here, but simply that the intent of the defendants was to harm his business for reasons that the Complaint does not set forth.

[6] There are cases in this Circuit at least suggesting that abuse of civil process can be established by proof that a lawsuit was filed with the intention of putting a competitor out of business. See e.g., Krasnyi Oktyabr, Inc. v. Trilini Imports, 578 F. Supp. 2d 455 (E.D.N.Y. 2008). These cases are inapposite. "The distinction between civil and criminal abuse of process is critical for section 1983 purposes." Cook, 41 F.3d at 80.

5

. to prevent him from writing a book about their 'nefarious lifestyle,' to 'silence plaintiff's criticism of defendants,' to undermine his credibility, to harm his business, reputation, and person, and to 'extort a non-disclosure agreement.'" Id. at *8. Because he did not allege that "the perverted operation of the process itself tended to effect the defendants' malicious objectives," id., the court dismissed the claim.[7]

In Cornell v. Kapral, No. 09 Civ. 0387, 2011 WL 94063, at *1 (N.D.N.Y. Jan. 11, 2011), aff'd, 483 F. App'x 590 (2d Cir. 2012), the defendant police officer allegedly took "a sudden and personal interest in Plaintiff," who was employed at a county juvenile detention center and also was the owner of a retail consignment shop, after the plaintiff filed letters criticizing practices at the center. The defendant's investigation involved accusations of fraud and larceny, and ultimately led to the plaintiff's arrest. The court observed that "[w]hile certainly Plaintiff's arrest may have had the end result of causing him to go out of business, something [defendant] may have been aware of," there was insufficient evidence of improper purpose because there was no evidence suggesting that the defendant "contacted [the plaintiff] prior to his arrest, and suggested that, if he did something . . . he would not be arrested." Id. at *12.[8] The court concluded that "[a]t best, Plaintiff has offered evidence of malice." Id.

I know of no district court cases in this Circuit that hold otherwise. Cases decided in other Circuits reveal divergent views. Compare, e.g., Di Maggio v. O'Brien, 497 F. Supp. 870, 878 (E.D. Pa. 1980) (allegations that arrests for building and zoning violations were intended to drive decorator "out of business and out of the area" stated claim) with Magnum Towing &

---

[7] Jones also stands for a proposition sometimes stated, and relied upon by defendants, that the collateral objective in an abuse of process case must arise "after" the issuance of process. I do not rely on this proposition in deciding this motion; I simply hold that there has been no collateral objective alleged.

[8] Cornell involved a combined motion to dismiss and for summary judgment. The court held that plaintiff's allegations failed to state a claim and, in the alternative, that its evidence in opposition to the motion did not support his claim for abuse of process.

Recovery v. City of Toledo, No. 3:04CV7671, 2007 WL 2492434, at *9 (N.D. Ohio Aug. 29, 2007) aff'd, 287 F. App'x 442 (6th Cir. 2008) (granting summary judgment for defendants where there was no evidence of use of process as a "threat or club" (quotation omitted)). In most, if not all, of the cases in other jurisdictions in which claims of a collateral purpose to harm a plaintiff's business have been sustained, there were other facts from which a court could infer improper purpose. See, e.g., Di Maggio, 497 F. Supp. at 878 (lack of probable cause, discussed further *infra*); Adrian v. Selbe, No. CIV.A. 06-0455, 2007 WL 164642, at *8 (W.D. La. Jan. 17, 2007) (involving allegations that collateral purpose was desire "to allow the plaintiffs' government contracts to go politically influential [local] businesses").

This seems to be a clear case in which the Second Circuit's distinction between improper motive and improper purpose is dispositive. Although the Complaint does not fully explain the source of the alleged malice that defendants harbored toward plaintiff, it certainly does not allege that they had any objective in issuing him summonses other than spite. Even if it is true that defendants' unwanted attention was driven by plaintiff's prior interactions with the Precinct, there is no allegation that defendants intended to do anything other than enforce valid local statutes against him in a heavy-handed manner because they suspected him of criminal activity. Moreover, plaintiff does not allege any facts that would support the inference that defendants knew or intended – let alone had as their objective – that his business would be shut down as a result of the three occasions on which they issued him summonses. Any criminal process issued against a private individual necessarily causes some harm, and I see no reason to single out the specific economic harm that befell plaintiff in this case as giving rise to an abuse of process claim. I therefore hold that plaintiff has failed to state a claim for malicious abuse of process because he has not alleged a collateral objective. See Savino, 331 F.3d at 76.

7

**III.     Qualified Immunity**

Even if there was a collateral objective pled in this Complaint, defendants are entitled to qualified immunity. A government official is protected by qualified immunity if his "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." Mandell v. Cnty. of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003). The Second Circuit asks specifically

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 129-30 (2d Cir. 2004) (quotation omitted). First and foremost, in light of the authorities discussed above, the right to be free from malicious abuse of process, as plaintiff would define it (*i.e.*, to be free from criminal process initiated by police out of a vindictive desire to harm a person's livelihood) is not clearly established. Defendants are entitled to qualified immunity on that basis alone.

Second, I agree with defendants that they are entitled to qualified immunity because plaintiff has not alleged that the criminal process in question was issued without probable cause. The Second Circuit has long recognized that probable cause is not a complete defense to malicious abuse of process. See, e.g., Lodges 743 and 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp., 534 F.2d 422, 465 n. 85 (2d Cir. 1975). But as one recent decision in this district has noted, and I agree, this rule is far from clearly established. At least as of 2011, "although there was a clearly established right to be free from malicious abuse of process . . . it was not clearly established that such a claim can exist even when probable cause existed for the issuance of the tickets." Mangino v. Inc. Vill. of Patchogue, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011); accord Cornell, 2011 WL 94063, at *13.

8

In Mangino, Judge Bianco reviewed numerous district court decisions in this Circuit, and one unpublished 2009 decision of the Second Circuit, the language of which suggested that probable cause is a complete defense to the constitutional tort of abuse of process. 814 F. Supp. 2d at 250-51 (collecting cases). I agree with Judge Bianco's conclusion that these ambiguous statements of law most likely result from the unwarranted expansion of a more limited but correct principle – specifically, the principle that a lack of probable cause is sometimes sufficient evidence of a collateral objective, even though it is not necessary. See id. at 251. I also agree, however, that "this potential explanation for the rationale behind these cases does not eviscerate qualified immunity for officers who could have objectively relied upon these broad statements of law by numerous courts in this Circuit." Id.

That conclusion does not end the inquiry, however. Indeed, arguably, a reasonable police officer in this jurisdiction, handing out summonses after the entry of my colleague's thorough published decision in Mangino, would have been disabused of any notion that probable cause is a complete defense. Other judges, unfortunately, have not made the reasonable police officer's interpretive task any easier, continuing to issue holdings that can be read to shed doubt on the correct rule. See, e.g., Widget v. Town of Poughkeepsie, No. 12 CIV. 3459, 2013 WL 1104273, at *9 (S.D.N.Y. Mar. 18, 2013) ("A malicious abuse of process claim also requires intent to do harm without excuse or justification. Probable cause negates this element."); see also Posner v. City of New York, No. 11 CIV. 4859, 2014 WL 185880, at *7 (S.D.N.Y. Jan. 16, 2014) ("Courts in this Circuit appear to be divided on whether the existence of probable cause defeats a claim for malicious abuse of process.") (citing id.).

The Second Circuit apparently has not yet cleared things up. See Betts v. Shearman, 751 F.3d 78, 81 (2d Cir. 2014) ("We hold, first, that because arguable probable cause existed to arrest

Betts, his claims for false arrest, false imprisonment, abuse of process, and malicious prosecution were properly dismissed."). The Court in Betts actually based its affirmation on the fact that the district court had "dismissed the abuse of process claim for failing to plead a 'nefarious aim' behind his prosecution," id. at 82, and did not specifically address that claim again in affirming the dismissal ruling in its entirety. But the language of the Court's holding cited above, in a published opinion, is sufficient to create exactly the kind of legal ambiguity that gives rise to qualified immunity. See also Pinter v. City of New York, 448 F. App'x 99, 105-06 (2d Cir. 2011) ("declin[ing] to speculate what effect" a finding of probable cause would have on abuse of process claim, among others, where the parties had not addressed it).

There is one final issue. Here, it is not beyond question that plaintiff has failed to plead an absence of probable cause. For example, the Complaint makes reference to the "nonexistent violations" that gave rise to the summonses issued to plaintiff's barber shop. But to plead that there was actually no violation is not the same as pleading that there was no probable cause to believe that there was. See Fabrikant v. French, 691 F.3d 193, 217 (2d Cir. 2012). Moreover, in response to defendants' criticism of plaintiff's pleading on these grounds, he does not contend that he pled an absence of probable cause; he argues only that defendants' mention of this shortcoming is "irrelevant as 'the existence of probable cause is not determinative . . . .'" Especially in light of this concession, I find that plaintiff has failed to plead an absence of probable cause, and that defendants are entitled to qualified immunity for this reason as well as for plaintiff's failure to plead a collateral objective.

## CONCLUSION

Defendants' [34] motion for partial dismissal is granted, and plaintiffs' claim for abuse of process relating to the loss of James Goldring's business is dismissed. Plaintiff asks for leave to

amend, but he has had ample opportunity to articulate a cause of action based on the original Complaint, and has not done so, nor has he suggested what additional facts could be pled in good faith to support a viable cause of action.  His request is therefore denied.  Moreover, because I have this dismissed claim as against the individual defendants, plaintiff's arguments with respect to Monell liability are moot.

**SO ORDERED.**

                                                                          U.S.D.J.

Dated: Brooklyn, New York
       January 12, 2014